## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| _____ ) | |
| ZENITH AMERICAN SOLUTIONS, INC., ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | CIVIL ACTION NO. 3:25-cv-825 |
| v. ) | |
| ) | |
| ERIC MARINARO; ANGELA CHAMPION; ) | |
| and SOLXSYS ADMINISTRATIVE ) | |
| SOLUTIONS, L.L.C. ) | |
| ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |
| _____ ) | MAY 23, 2025 |

### <u>VERIFIED COMPLAINT</u>

Zenith American Solutions, Inc. for its complaint against Eric Marinaro ("Marinaro"), Angela Champion ("Champion"), and Solxsys Administrative Solutions, L.L.C. ("Solxsys," and together with Marinaro and Champion, "Defendants") states as follows:

### I.    INTRODUCTION

1.    Defendants Marinaro and Champion are former Zenith employees who left Zenith to go work for its competitor Solxsys. Marinaro and Champion have restrictive covenants with Zenith preventing them from poaching both Zenith's employees and customers. But rather than honor those obligations, Solxsys, Marinaro, and Champion are actively working to poach Zenith's workforce and steal its customer base. In recent months, multiple customers and employees have left Zenith in favor of Solxsys. Under the circumstances, Marinaro and Champion, with support from Solxsys, are believed to be directly and/or indirectly participating in these efforts. In addition, and in blatant violation of their non-solicitation obligations, Zenith executives saw and overheard Marinaro and Solxsys member George Buhalis ("Buhalis") actively pitching an existing Zenith

customer to leave Zenith and move its business to Solxsys so Champion could manage the account. The Defendants' conduct is causing irreparable harm to Zenith. Zenith seeks preliminary and permanent injunctive relief to prevent further, irreparable injury.

## II.     PARTIES

2.     Since 1944, Zenith has been a third-party administrator of benefits, primarily for Taft-Hartley multi-employer funds. It provides a range of administrative services for health and welfare plans, retirement plans, and other employee benefits.

3.     Solxsys, launched in 2019, provides both third-party administration services and software solutions for benefit administration, particularly for Taft-Hartley and VEBA Trust Funds.

4.     Solxsys and Zenith are competitors.

5.     Marinaro is a former executive employee of Zenith and a current executive for Solxsys. Upon information and belief, Marinaro resides and works in Connecticut.

6.     Champion is a former executive employee of Zenith and current employee of Solxsys. Upon information and belief, Champion resides in New York and works in Connecticut or performs services for Taft-Hartley multi-employer funds located in Connecticut.

## III.     VENUE AND JURISDICTION

7.     This Court has jurisdiction over this matter based on complete diversity of citizenship pursuant to 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

8.     Solxsys is a limited liability company, and its sole member is George Buhalis. On information and belief, Buhalis is a citizen of Tennessee. Thus, Solxsys is a citizen of Tennessee for diversity purposes.

9.     Zenith is a corporation organized under the laws of Maryland with its principal place of business located in Florida. Thus, it is a citizen of Maryland and Florida for diversity purposes.

10.    Marinaro is a citizen of Connecticut.

11.    Champion is a citizen of New York.

12.    Solxsys is subject to personal jurisdiction in this Court. Solxsys maintains an office at 321 Research Parkway in Meriden, Connecticut, and has employees in Connecticut, including at least Marinaro and Champion. Upon information and belief, Solxsys is also doing business with customers located in Connecticut.

13.    Defendant Marinaro is subject to personal jurisdiction in this Court. Upon information and belief, Defendant Marinaro resides in Connecticut. In addition, Marinaro previously worked for Zenith in its Wallingford, Connecticut office and currently works for Solxsys in its Meriden, Connecticut office. Upon information and belief, Marinaro is also soliciting and doing business with customers located in Connecticut.

14.    Defendant Champion is subject to personal jurisdiction in this Court. Champion previously worked for Zenith in its Wallingford, Connecticut office and currently works for Solxsys. Upon information and belief, Champion is based out of Solxsys's Meriden, Connecticut office, and Champion is soliciting and doing business with customers located in Connecticut.

15.    Each Defendant has sufficient minimum contacts with the State of Connecticut to satisfy due process and/or the requirements of the Connecticut Long Arm Statute, and each Defendant has purposefully availed her/his/itself of the benefits and burdens of Connecticut law and/or the privileges of conducting business in Connecticut.

16.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) as a district in which a substantial part of the events and omissions giving rise to the claims occurred.

## IV.  FACTUAL ALLEGATIONS

17.     Zenith is a third-party administrator of benefits, primarily for Taft-Hartley multi-employer funds, providing a range of administrative services for health and welfare plans, retirement plans, and other employee benefits. Among other things, Zenith offers processing claims, managing eligibility and enrollment, handling COBRA administration, contribution and trust accounting, and offering regulatory reporting services.

### Marinaro's Employment with Zenith

18.     Marinaro was employed with Zenith from April 4, 2022, until April 26, 2024. While at Zenith, Marinaro gained familiarity and exposure to many aspects of Zenith's business and had direct access to its customers. Marinaro's most recent role at Zenith was in an executive position as Director, Client Services. In that role he had access to Zenith's confidential information, including confidential customer financial and operational information, and had direct communication with Zenith customers, including managing many of Zenith's customer relationships. Marinaro also had significant relationships with Zenith employees. Not only was Marinaro sought out by many Zenith employees as a trusted advisor, but he also directly supervised other Zenith employees.

19.     In connection with his employment with Zenith, Marinaro signed a Confidentiality and Non-solicitation Agreement on April 4, 2022 (the "Marinaro Agreement"). A true and accurate copy of the Marinaro Agreement is attached as Exhibit A.

20.    The Marinaro Agreement contains the following two-year non-solicitation obligation, preventing Marinaro from recruiting or soliciting Zenith employees and preventing the inducement of any Zenith customers to leave Zenith:

> You agree and covenant that, during the course of your employment with the Company and for an additional period of two (2) years following termination of your employment, you shall not, directly or indirectly, whether through your individual efforts or through another person or entity, (i) knowingly recruit or solicit for employment any person who at any time during the preceding 6-month period was an employee of or independent contractor performing services for the benefit of the Company, or in any way interfere with the relationship between the Company and any employee or independent contractor servicing the Company, or (ii) knowingly induce or attempt to induce any client, customer, independent contractor, vendor, service provider, or any Qualified Prospect (collectively referred to as a "business relation"), to cease or reduce its business with the Company or in any way interfere with the relationship between any such business relation and the Company (including, without limitation, by making any negative statements or communications concerning the Company).

*See* Marinaro Agreement. Ex. A, § 2.

21.    The Marinaro Agreement also contained confidentiality obligations, including the following:

> You shall not use or disclose at any time any Confidential Information…except to the extent that such disclosure or use is directly related to and required by you in the performance of your duties for [Zenith]. You further acknowledge that use or disclose of such information for personal or professional gain…is strictly prohibited.
>
> …
>
> Upon termination of your employment, you agree that you shall not use such information or materials for your own benefit or to the detriment of [Zenith], make or retain any copies of such information or materials for your own use or take the originals or copies of any such information or materials from the offices of [Zenith].

*See* Marinaro Agreement. Ex. A, § 1(a) & (d).

22.    Marinaro also agreed that "monetary damages will not be an adequate remedy" for a breach and that "irreparable injury will result" to Zenith in the event of a breach. Marinaro Agreement. Ex. A, § 6.

23.    Marinaro also agreed to "notify all future employers of [his] obligations" under the Agreement. Marinaro Agreement. Ex. A, § 7.

<strong>Champion's Employment with Zenith</strong>

24.    Champion was employed with Zenith from April 30, 2023, until January 31, 2025. As a Client Services Executive, Champion worked closely with Defendant Marinaro on certain east coast customers prior to his separation date, and she took over several Zenith customers previously serviced by Marinaro after his last day of employment with Zenith.

25.    Champion was responsible for numerous customer relationships and had access to confidential customer information.

26.    In connection with her employment with Zenith, Champion signed a Confidentiality and Nonsolicitation Agreement on April 30, 2023 ("Champion Agreement"). A true and accurate copy of the Champion Agreement is attached as Exhibit B.

27.    The Champion Agreement contains the following two-year non-solicitation obligation, preventing Champion from recruiting or soliciting Zenith employees and preventing the inducement of any Zenith customers to leave Zenith:

> You agree and covenant that, during the course of your employment with the Company and for an additional period of two (2) years following termination of your employment, you shall not, directly or indirectly, whether through your individual efforts or through another person or entity, (i) knowingly recruit or solicit for employment any person who at any time during the preceding 6-month period was an employee of or independent contractor performing services for the benefit of [Zenith], or in any way interfere with the relationship between [Zenith] and any employee or independent contractor servicing [Zenith], or (ii) knowingly induce or attempt to induce any client, customer, independent contractor, vendor, service provider or any Qualified Prospect (collectively referred to as a "business

relation"), to cease or reduce its business with [Zenith] or in any way interfere with the relationship between any such business relation and [Zenith] (including, without limitation, by making any negative statements or communications concerning [Zenith]).

*See* Champion Agreement. Ex. B, § 2.

28.     The Champion Agreement also contains confidentiality obligations, including the following:

> You shall not use or disclose at any time any Confidential Information…except to the extent that such disclosure or use is directly related to and required by you in the performance of your duties for [Zenith].
>
> …
>
> Upon termination of your employment, you agree that you shall not use such information or materials for your own benefit or to the detriment of [Zenith], make or retain any copies of such information or materials for your own use or take the originals or copies of any such information or materials from the offices of [Zenith].

*See* Champion Agreement. Ex. B, § 1(a) & (d).

29.     Champion also agreed that "monetary damages will not be an adequate remedy" for a breach and that "irreparable injury will result" to Zenith in the event of a breach. Champion Agreement. Ex. B, § 6.

30.     Champion also agreed to "notify all future employers of [her] obligations" under the Agreement. Champion Agreement. Ex. B, § 7.

**Defendants Poach Zenith Customers & Employees**

31.     Marinaro's employment with Zenith ended on April 26, 2024. He then joined Solxsys as a Vice President of Plan Administration.

32.     Counsel for Zenith sent Marinaro a letter on June 28, 2024, expressly reminding Marinaro of his contractual obligations to Zenith including his confidentiality and non-solicitation obligations. A true and accurate copy of the letter is attached as Exhibit C.

7

33.     On information and belief, Marinaro heads up Solxsys's Connecticut office in Meriden, Connecticut and is responsible for hiring and staffing this office.

34.     Solxsys's Meriden office is strategically located a mere fifteen minutes away from Zenith's Wallingford, Connecticut office.

35.     Following Marinaro's departure, other Zenith employees began leaving in July and August 2024 for Solxsys, including (a) an Accounts Receivable Manager, with responsibility for all customer accounts receivable in the Connecticut office, (b) an Accounts Receivable Supervisor, with responsibility for all Connecticut customers, (c) a Customer Care Supervisor, with responsibility for eligibility and customer care in the Connecticut office, (d) a Senior Claims Processor, with responsibility for all Connecticut customers, (e) a Claims Processor, (f) multiple customer service employees, (g) a Senior Pension Analyst, and (h) a Client Services Executive (Champion).

36.     Upon information and belief, Marinaro engaged in directly or indirectly recruiting some or all of these Zenith employees to join Solxsys.

37.     Counsel for Zenith sent Solxsys a letter on September 19, 2024, expressly informing Solxsys of Marinaro's obligations to Zenith and expressing concern about its suspicions that Marinaro was facilitating the recruitment by Solxsys of Zenith employees, in violation of his Agreement. A true and accurate copy of the letter is attached as Exhibit D.

38.     Solxsys's counsel responded on September 30, 2024, assuring Zenith that (1) neither Marinaro nor any other former Zenith employee has divulged any confidential information; (2) that Solxsys has no desire to acquire confidential information from former Zenith employees; and (3) that Marinaro did not attempt to recruit any current or former Zenith employees, and had

never communicated with any current or former Zenith employee about prospective employment with Solxsys. A true and accurate copy of the letter is attached as Exhibit E.

39.     Yet, the poaching of Zenith employees continued.

40.     On information and belief, the departing employees also took Zenith confidential information. In an instant message exchange between two departing employees shortly before they left in mid-July, one says "remember cheap shots - take screenshots." The other departing employee responds: "10-4 good buddy."

41.     Champion terminated her employment with Zenith on January 31, 2025. She then went to work with Marinaro at Solxsys. Upon information and belief, Marinaro engaged in directly or indirectly recruiting Champion to join Solxsys.

42.     Zenith sent Champion (with a copy to Solxsys) a letter on March 10, 2025, reminding Champion of her obligations and expressing concern about her behavior.  A true and accurate copy of the letter is attached as Exhibit F.

43.     Champion responded on March 12, 2025, assuring Zenith that she (1) had since ceased using Zenith's confidential information "in connection with [her] current employer or former Zenith clients"; and (2) would "commit to abiding to the legal and contractual obligations to Zenith going forward."  A true and accurate copy of the letter is attached as Exhibit G.

44.     In addition to Champion, no less than 13 other Zenith employees, all of whom Marinaro and Champion would have known, have been hired away from Zenith and have immediately joined Solxsys since Marinaro's departure. Upon information and belief, Marinaro helped recruit or solicit these employees to leave Zenith and join Solxsys.

45.     Not only has Solxsys poached Zenith's workforce, Marinaro, Champion and Solxsys have poached Zenith's customers as well.

9

46.     Customers of third party-claims administrators are typically sticky. In other words, there is not frequent movement from one administrator to another. The transition from one administrator can be cumbersome. Customers are notably long-term.

47.     But at least three long-tenured customers have abruptly ended their business relationships with Zenith in favor of Solxsys since Marinaro's departure. And all the former Zenith employees who Solxsys hired after Marinaro left Zenith worked with these customers.

48.     On information and belief, Marinaro and Champion have been involved in inducing these customers to leave Zenith. **All** three customers were assigned to Marinaro while he was at Zenith and some were subsequently assigned to Champion, who was then their point of contact while she was employed at Zenith.

49.     Not only is Champion soliciting Zenith customers, but she also has confidential information about these customers obtained during her employment with Zenith.

50.     On the eve of her departure from Zenith, Champion emailed herself from her Zenith email account to her personal Gmail email account confidential business information pertaining to Zenith customers.  There was no legitimate Zenith business purpose for Champion to send herself these documents.

51.     For example, on January 31, 2025, Champion emailed herself meeting minutes from a Zenith customer from a meeting she attended as a Zenith employee.  On January 15, 2025, Champion emailed herself a spreadsheet of "contacts" for that same customer.  On January 9, 2025, Champion emailed herself another document of "minutes" containing notes for yet another customer.

52.     These documents were created by Champion in her capacity as a Zenith employee, and she did not have permission from Zenith to take these documents. *See, e.g.,* Champion

Agreement, Ex. B (defining confidential information to include identities of, requirements of, and arrangements with customers).

53.    The Zenith Handbook also expressly prohibited Champion's taking of this information. It provides in relevant part:

> Our business is based on our ability to safeguard the information entrusted to us. Our customers depend on us to provide services that reflect and maintain the confidentiality of their business. It is vitally important that you recognize your duty to maintain the confidentiality of trade secrets, proprietary and confidential information, and not to use such information in competition with or to otherwise harm the Company or our customers or their health plan members.

Both Marinaro and Champion received the handbook, acknowledged they read it and agreed to abide by these Company policies.

54.    In addition, Marinaro and Champion were both involved in a pitch to an existing Zenith customer on April 24, 2025, in New York City. Solxsys and Zenith were two of the finalists making presentations in response to a request for proposal. As Marinaro and Champion knew, this was a long-time Zenith customer that Marinaro managed while employed at Zenith. Marinaro had direct access to the customer and Marinaro and Champion had access to confidential information related to this and/or other Zenith customers prior to their departure from Zenith.

55.    Zenith Chief Operating Officer Susan Paul both saw and heard Marinaro at the meeting.  Paul and Zenith Regional President Robin Donovick heard a Solxsys presenter, believed to be Solxsys founder Buhalis, announce that Champion would be assigned to the customer fund if selected. Likewise, Paul and Donovick heard Buhalis (who attended remotely) from an adjacent area during Solxsys's presentation speaking disparagingly about Zenith in Solxsys's pitch to win the work and take the customer from Zenith.

11

## V.    CLAIMS FOR RELIEF

### COUNT I: Breach of Contract (Marinaro)

55.    Zenith repeats and realleges all of the foregoing allegations contained in this Complaint as if set forth fully herein.

56.    The Marinaro Agreement is a valid contract that is binding upon Marinaro.

57.    Zenith has complied with all its obligations to Marinaro under the Marinaro Agreement.

58.    The Marinaro Agreement is enforceable, and its restrictive covenants are reasonable in both scope and duration.

59.    Marinaro agreed in the Marinaro Agreement that a breach results in irreparable harm.

60.    Marinaro has breached the Marinaro Agreement by (a) directly or indirectly recruiting or soliciting Zenith employees and (b) knowingly inducing or attempting to induce clients or customers to cease or reduce their business with Zenith or otherwise interfering with the relationship between those customers and Zenith.

61.    Marinaro's breach of his Agreement has directly and proximately caused, and will continue to cause, substantial harm to Zenith, including, without limitation, loss of goodwill, which cannot be adequately measured in money damages.

62.    Unless and until enjoined by this Court, and as a direct and proximate result of Marinaro's conduct as described herein, Zenith has suffered and will continue to suffer irreparable harm.

## COUNT II: Breach of Contract (Champion)

63.     Zenith repeats and realleges all of the foregoing allegations contained in this Complaint as if set forth fully herein.

64.     The Champion Agreement is a valid contract that is binding upon Champion.

65.     Zenith has complied with all its obligations to Champion under the Champion Agreement.

66.     The Champion Agreement is enforceable, and its restrictive covenants are reasonable in both scope and duration.

67.     Champion agreed in the Champion Agreement that a breach results in irreparable harm.

68.     Champion has breached the Champion Agreement by (a) directly or indirectly recruiting or soliciting Zenith employees, (b) knowingly inducing or attempting to induce clients or customers to cease or reduce their business with Zenith or otherwise interfering with the relationship between those customers and Zenith, and (c) using or retaining Zenith confidential information,

69.     Under information and belief, Champion has further breached the Champion Agreement by using Zenith's confidential information to solicit Zenith employees, independent contractors, and clients/customers.

70.     Champion's breach of her Agreement has directly and proximately caused, and will continue to cause, substantial harm to Zenith, including, without limitation, loss of goodwill, which cannot be adequately measured in money damages.

71.     Unless and until enjoined by this Court, and as a direct and proximate result of Champion's conduct as described herein, Zenith has suffered and will continue to suffer irreparable harm.

**COUNT III: Tortious Interference with Contract (Solxsys)**

72.     Zenith repeats and realleges all of the foregoing allegations contained in this Complaint as if set forth fully herein.

73.     Zenith has a valid, enforceable agreement with Marinaro.

74.     Zenith has a valid, enforceable agreement with Champion.

75.     Solxsys has, at all relevant times, had actual knowledge of these contracts with Marinaro and Champion, through its agents and employees, including Marinaro and Champion.

76.     Upon information and belief, with Solxsys's knowledge and apparent endorsement, Marinaro has been poaching current and former Zenith employees to come work at Solxsys and soliciting Zenith customers, in violation of Marinaro's contractual duties to Zenith.

77.     Champion improperly transferred confidential customer information to her personal Gmail account from her official Zenith account before her resignation and current employment at Solxsys.  With Solxsys's knowledge and apparent endorsement, Champion has used Zenith's confidential information to solicit Zenith customers, in violation of Champion's contractual duties to Zenith.

78.     Upon information and belief, Solxsys has intentionally and maliciously interfered with the obligations of Marinaro and Champion under their agreements with Zenith, by engaging Marinaro and Champion as employees and encouraging and endorsing their use of Zenith's confidential information, as well as to solicit Zenith's employees and customers in violation of their agreements with Zenith and while making disparaging statements about Zenith.

79.     Solxsys's conduct went and continues to go beyond generally accepted standards of morality, professionalism, and socially accepted conduct.

80.     Solxsys is knowingly and directly benefiting from the protected information used by Marinaro and Champion to Zenith's detriment.

81.     Solxsys's tortious interference has caused and will continue to cause Zenith irreparable harm in the form of the loss of the benefits of its bargains, loss of the exclusive use of its confidential information, loss of its competitive advantage in the marketplace, damage to customer and employee relationships, loss of business opportunities, and loss of goodwill. Absent an injunction, Zenith will be irreparably injured. Zenith has no meaningful remedy at law for these irreparable injuries.

**COUNT IV: Tortious Interference with Business Relations (All Defendants)**

82.     Zenith repeats and realleges all the foregoing allegations contained in this Complaint as if set forth fully herein.

83.     Zenith has established business relationships with various third-party customers.

84.     Upon information and belief, Marinaro, Champion, and Solxsys have been using confidential Zenith information to solicit Zenith customers.

85.     Marinaro and Champion, through their employment at Zenith, had knowledge of the business relationships between Zenith and various third-party customers.  On information and belief, Solxsys learned of Zenith's business relationships from Marinaro and Champion.

86.     Upon her departure from Zenith, Champion improperly transferred Zenith's confidential information to her personal email account from her official Zenith email account.

87.     Upon information and belief, Marinaro, Champion, and Solxsys improperly used knowledge of Zenith business relationships and confidential information when, Marinaro and

Champion, acting as Solxsys employees and alongside Solxsys member George Buhalis, were involved in openly soliciting an existing Zenith customer at an April 2025 RFP while Buhalis made disparaging remarks about Solxsys.

88.    Upon information and belief, Solxsys has intentionally and maliciously interfered with Zenith's business relationships by locating its office near Zenith's, poaching Marinaro and Champion as employees—along with many others—and encouraging, endorsing, and accompanying Marinaro and Champion while they use Zenith's confidential information and Solxsys makes disparaging remarks to improperly solicit Zenith's customers.

89.    Marinaro's, Champion's, and Solxsys's conduct went and continues to go beyond generally accepted standards of morality, professionalism, and socially accepted conduct.

90.    Marinaro, Champion, and Solxsys have intentionally, and with improper motive and through improper means, tortiously interfered with the business relationships between Zenith and various third-party customers by using improperly acquired confidential information and disparaging remarks.

91.    Had Marinaro, Champion, and Solxsys not interfered with Zenith's business relationships with third-party customers, Zenith would have received the economic benefit of its respective business relationships with those customers.

92.    Zenith has suffered actual loss because three long-tenured customers have ended their business relationship with Zenith to move to Solxsys. Moreover, on information and belief, Zenith suffers ongoing harm due to attempts to solicit Zenith customers by using protected Zenith information.

93.    Marinaro's, Champion's, and Solxsys's tortious interference has caused and will continue to cause Zenith irreparable harm in the form of the loss of profits, exclusive use of its

confidential information, its competitive advantage in the marketplace, customer and employee relationships, business opportunities, and goodwill.

94.     Absent an injunction to prevent Marinaro, Champion, and Solxsys from continuing to tortiously interfere with Zenith's business relationships with its customers, Zenith will be irreparably injured. Zenith has no meaningful remedy at law for these irreparable injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Zenith American Solutions, Inc. prays for judgment in its favor and against Defendants Eric Marinaro, Angela Champion, and Solxsys Administrative Solutions, L.L.C., and prays for the following relief:

1. Issue preliminary and permanent orders restraining and enjoining Marinaro immediately from breaching his contract with Zenith, including his post-employment restrictive covenants, and engaging in the wrongful conduct described herein, including interfering with Zenith's relationships with its customers;

2. Issue preliminary and permanent orders restraining and enjoining Champion immediately from breaching her contract with Zenith, including her post-employment restrictive covenants, and engaging in the wrongful conduct described herein, including interfering with Zenith's relationships with its customers;

3. Issue preliminary and permanent orders restraining and enjoining Solxsys from interfering with Zenith's contractual relationships with Marinaro and Champion and Zenith's relationships with its customers;

4. Issue an order that the above-requested relief be binding upon Defendants and their affiliates, successors and assigns, agents, servants, employers, employees, representatives, attorneys, and persons in active concert or participation with any of them;

5. Award all costs and expenses incurred by Zenith in this proceeding, including attorneys' fees;

6.   Award damages in an amount to be proved at trial; and

7.   Award such other relief as the Court may deem to be appropriate and just.

Respectfully submitted,

**THE PLAINTIFF, ZENITH AMERICAN SOLUTIONS, INC.**

/s/ Gary S. Klein
Gary S. Klein (ct09827)
**CARMODY TORRANCE SANDAK & HENNESSEY LLP**
1055 Washington Boulevard, 4th Floor
Stamford, CT  06901-2218
(203) 252-2696 (tel)
(203) 325-8608 (fax)
gklein@carmodylaw.com

Harmony A. Mappes
(*Pro Hac Vice* forthcoming*)*
Catherine A. Wheatley
(*Pro Hac Vice* forthcoming)
**FAEGRE DRINKER BIDDLE & REATH LLP**
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
(317) 237-0300 (tel)
(317) 237-1000 (fax)
harmony.mappes@faegredrinker.com
catie.wheatley@faegredrinker.com

*Its Attorneys*

18

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ZENITH AMERICAN SOLUTIONS, INC., | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CIVIL ACTION NO. 3:25-cv-825 |
| v. | ) |
| | ) |
| ERIC MARINARO; ANGELA CHAMPION; | ) |
| and SOLXSYS ADMINISTRATIVE | ) |
| SOLUTIONS, L.L.C. | ) |
| | ) |
| | ) |
| DEFENDANTS. | ) |
| | ) MAY 23, 2025 |
| | ) |

**<u>VERIFICATION</u>**

The undersigned hereby certifies that the factual allegations in the Verified Complaint are true and accurate to the best of my knowledge and belief.

Signed and dated at __05/23/2025__, Ohio on this 23 day of May, 2025.

ZENITH AMERICAN SOLUTIONS, INC.

By:_____
Susan Paul (May 23, 2025 15:42 EDT)
Susan Paul
Chief Operating Officer